0-4 Franklin v. United States at all. Mr. Friedman, you may proceed. The right to travel outside of our country's borders is a fundamental right. Congress may infringe that right so long as it does so in a manner that satisfies strict scrutiny. Because it did not pass strict scrutiny, the FAST Act is unconstitutional. We ask the Court strike down Section 7345. May it please the Court. The government's position boils down to this. The right to travel outside of the United States is not a fundamental right. It is not a right that is deeply rooted in our nation's history and values. And I would ask this to start. At the time of our country's founding, do you think that there was a single person who believed that in forming this nation they would be prohibited from stepping outside of its borders? And the reason the answer is no to that is multifaceted. The right was memorialized in the Magna Carta. It was recognized by Blackstone. Its violation was listed as a grievance in the Declaration of Independence. It is embodied in the Universal Declaration of Human Rights, adopted by the General Assembly of the UN. It has been statutorily recognized by Congress and acknowledged by the Supreme Court. Yet as impressive as this lineage is, the right derives from an even more fundamental source. The people. The people had this right, the right to travel, and the right to travel internationally before the Union even came into existence. So I would ask, Your Honors, if it is not fundamental to individual liberty, then what is? I have no problem with what you're saying. It sounds absolutely right to me. We do have some difficulty with the U.S. Supreme Court backing off from equating the degree of protection of the right to travel within the country and the right to travel internationally. You're more familiar with the case law than I am, I'm sure, such as Califano. It does seem to me we have to look at international travel in some distinct way from the very broad fundamental right to travel within this country. If you don't concede that, I'm not sure we can have a useful conversation here. I concede it. I concede it, but I'll tell you it is a concession with distinctions that I don't think are fully appreciated. And those distinctions help very clearly to reconcile the cases that I understand we're here to talk about today. And I do intend to address them. I will tell you the case that you will ultimately most easily find that reconciliation is as a Navarrian case. And I'll kind of set it out at a broad level, and then I will dive into that and address it. But what I'll tell you the distinction is, is we need to understand and recognize, well, first we need to carefully scrutinize the constitutional source of the protected interest or right that is at issue. And there may be more than one source for some interests. For example, the right to travel, in the case that I just mentioned, the Supreme Court cites to a case that will become important in shedding light on the meaning of some of its phraseology there. When you look to that case, it's the Southwick case, it footnotes and notes the fact that the right to travel has been found in the Supreme Court's jurisprudence to derive from more than one constitutional provision. I say the right to travel, so it has been found to emanate from the Privileges and Immunities Clause in Article IV. It has been found to derive, obviously, from the liberty interest protected by due process in the Due Process Clause. It has been found to derive from structural implications. One could even say from federalism. There are even Commerce Clause rights. Now, this is where I will reconcile, and my concession will maybe make sense as to why it compels what I'm requesting here. The right to travel internationally has only, to my knowledge, ever been found to emanate from the liberty interest. It is a mere aspect of what we conceptualize that word liberty to represent and encompass and be protected by within the Fifth Amendment. And so that ultimately sheds light, and in fact, I'll just jump to that. I'll reconcile these cases for you in something of short order, I think. I want to start with Glucksberg. Glucksberg imposes a high standard, no doubt about it. But when the court there, the Supreme Court, says we must exercise the utmost care in recognizing a fundamental right, it's not counseling inaction. It is definitely not counseling abdication. And what you'll find is in the sentence directly after it says so, it says, and I quote, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this court. You can see a lot of cases where that is a real concern because we are dealing with highfalutin language that may be susceptible to being molded. This is not, this case here, the right to travel or the right to travel internationally does not implicate those concerns. In fact, the right to recognize it, the obligation to recognize it, I would say is this court's role. Yes, the court must be aware and cognizant of the gravity of recognizing such a role, but its place in a counter-majoritarian institution embodied in the Constitution mandates that it recognize that when it is there. Now, the Supreme Court in Kent v. Doles, right, in 1958, found that a governmental regulation prohibiting communists from being given a passport was unconstitutional. In Kent, the Supreme Court described the right using the lexicon for fundamental rights under the Due Process Clause, deeply ingrained in our history, part of our heritage, and basic in our scheme of values. It said the right to travel is part of the liberty of a citizen and cannot be deprived without due process of law under the Fifth Amendment. And it goes on to, I think very clearly in that paragraph, to equate, right, doesn't draw the distinction perhaps, but to equate the freedom of movement, which it says travel abroad, like travel within the country, as basic in our scheme of values. Now, Apotheker, several years later, considered again the constitutionality of a statute prohibiting any member of a communist organization from attempting to use or obtain a passport. And it really recognized the structural role, the structural role, much like the First Amendment, but let's be clear, never based its decision on the First Amendment and did not even cite to the First Amendment. Counsel, we've already started to talk about this. The Supreme Court may have foreclosed our ability to apply strict scrutiny here. If we were to apply intermediate scrutiny, would you win? Your Honor, I will tell you, I came here basing my decision, my position, on the fact that this is a fundamental right. I truly believe it is. I truly believe that is the right way to dispose of this case. We're an inferior court, and we are such other inferior courts as may be created. So we're not able to just do what we think we have to follow, hierarchical rulings. So first I'll say precisely, although inferior in the sense that we mean, of course, precisely. So the Supreme Court in Kent and Apotheker has recognized that this is a fundamental right. The argument that is presented and the concern that Your Honors have is, has the Supreme Court backed away from those pronouncements and statements made in Kent and Apotheker? The answer is, no, it has not. But we can start from a premise that the Supreme Court has stated it is the Supreme Court's prerogative to overrule its cases. And if this court or any other appellate court or lower court believes that a Supreme Court has been undermined, it is not the role of this court to overturn or imply that the court has overturned that. But the reason that I can say those cases don't actually overturn it or even undermine it, I will say they get a little confused at times. Not a single one of those decisions involves a statute that eliminated a person's ability to leave the United States altogether. Not one of them. As an Ivorian, it didn't restrict travel at all. Actually, all it did was impose what the court called an incidental burden on travelers by suspending SSI payments for folks while they traveled, nonetheless, freely outside of the United States. The Zimmel and Reagan cases, they involved a restriction of travel to a single country, to Cuba, based on what the court said were, quote, weighty concerns of national security following the Cuban Missile Crisis. Do you lose if we apply intermediate scrutiny? I'm not saying rational basis. Your Honor, I think we may lose if you apply intermediate scrutiny. You need strict scrutiny to win here today. I not only need strict scrutiny, I believe this is a fundamental right. Your Honors, let's recognize that no court has put this in the context of intermediate scrutiny. We would be creating law and forcing litigants to make wild guesses about what the extent of their rights and liberties are. I don't think intermediate scrutiny is the right way to approach this, but there's a couple of reasons for that. One, let's think about the implications of the government's view here. They're real. So today it restricts a taxpayer in the name of tax debts that it labels as seriously delinquent. And if it passes as the government maintains under rational basis test, or if it's subject to the rational basis test, then clearly it passes. But tomorrow, let's say the government's worried about inflation, and so it decides to prevent any citizen from leaving the country, what I would call a misguided effort to protect the dollar. All right? Rational basis. Or let's say that it decides $50,000. That's too much to define as a seriously delinquent tax debt. Let's say instead it's $10,000 or $1,000 or a $25 failure to file. They all pass rational scrutiny. I'll tell you, I lose on a rational basis test on those. I don't think that's a world we want to live in. Well, counsel, I think the world we do live in is that the hill may be too steep for you to convince, but we'll find out, that strict scrutiny involved. The case law seems to say rational basis. Not a lot of case law, and certainly not from the big court. I think you are right, best I could tell from the research we've seen, including your good brief and that of your friend on the other side, that intermediate scrutiny would be a new path, not yet taken, and I don't know if it's worth taking, but we'll see. So I certainly understand the reason why you are urging this so strongly, because I'm not sure it works otherwise, so we haven't decided that. But to say that the Supreme Court hasn't created significant doubts about your position would be incorrect, and even have changed the wording some from the right to travel to the freedom for international travel, which may or may not be significant, but there's no such thing as a fundamental right as a category. I don't know about fundamental freedoms. It sounds like they may be trying to change the analysis. I'm observing, maybe not asking, but if you have any response to all that, go ahead. Well, I'll respond. In the Aznavourian case, the court there has a quote that's certainly being used against me, and that is that legislation that infringes the freedom, as you pick up on, to travel abroad is not judged by the same standard applied to laws that penalize the rights to interstate travel. It says, such as durational residency requirements imposed by the states. At first blush and second and third blush, I had the same thoughts, but I had a revelation. What is it? So, Your Honors, this is where it becomes very, very important for us to look very closely at the source, the constitutional source of the right that is at issue. And so if you look at the cases cited before that quote and directly after, the two most prominent cases there, Shapiro v. Thomas and Memorial Hospital v. Maricopa, and they were decisions, this is the durational residency requirement, they were decisions in which the Supreme Court held that there were certain laws prohibiting newly arrived residents in a state or county from receiving certain vital benefits that other residents or longer term residents had received, and that that burdened the right of interstate travel. And these were known as the durational residency cases. And in Memorial Hospital, the court says, the right to interstate travel must be seen as ensuring new residents the same right to vital benefits and privileges in the state to which they migrate as are enjoyed by other residents. Now, the court was not saying there that the right to international travel was a lesser right than interstate travel vis-a-vis the liberty guaranteed by the due process clause. It was saying that interstate travel was a right that emanated not just from, not just from the due process clause's protection of liberty, but also from other sources, notably the Equal Protection Clause, which was at issue in that case and is the basis for that statement. You answered my question, but why don't you wrap it up? You're out of time. I apologize. So, Your Honor, it becomes important for us to understand that because, as I mentioned, there are multiple sources from which the right to travel emanates. The only one at issue here, and the fact that, look, yes, if we were in a different case arguing about the right to travel, as in Maricopa or as in Shapiro, I completely agree with the court's statement. A different standard would apply. If I'm arguing based on commerce clause, different standard. If I'm arguing based on privileges and immunities, different clause. I happen here to be arguing as a mere aspect of liberty, right, but that's everything in the due process clause context. And I am arguing from that because that's the only constitutional source I'm aware of that provides me with this interest, and I believe it's a fundamental right. Thank you very much for your argument. Save time for rebuttal. Thank you. Ms. Lyon. Thank you, Your Honor, and may it please the court. My name is Kathleen Lyon, and I represent the United States and the other federal defendants in this case. To prevail on his claim, on his constitutional claim, he, of course, has to show that there is a fundamental right to international travel, and as this court has already observed, the court in later cases, after Kant and Aptheker, have made clear that legislation restricting international travel is not to be judged by the same standard, and specifically in Hague, the court said that the freedom to travel internationally is subject to reasonable governmental regulation. I do want to address Mr. Freeman's points on the Aznavourian case. In that case, I think it's important to note that what was at issue there was an SSI benefit statute, and those are ordinarily reviewed on a rational basis standard. And Aznavourian requested, he argued that a more stringent standard should apply, more stringent than rational basis, because international travel was being limited in that case. And the court said two things. It rejected the equivalence between international travel and interstate travel, and it also said that the statute at issue there had an incidental effect. So I don't think you can reduce Aznavourian to just say, well, the statute there just had an incidental effect on travel. The court did address Aznavourian's argument with respect to whether a more stringent standard should apply. Assuming our window that the Supreme Court did not bind us here, why wouldn't text, history, and tradition say that this international travel was a fundamental right? Well, first, this court would not be writing on a blank slate on that. Obviously, the Kent case did discuss the Magna Carta, I think it mentioned Blackstone, but also declined to determine the constitutional issue of how much it could be constrained. It didn't answer the question. We're not bound by something the Supreme Court has said. What's your best argument that text, history, and tradition would not say it's a fundamental right? Well, Your Honor, I think that this court cannot examine that divorce from the case law that has come down. I mean, obviously, the Supreme Court understands its own precedent, and in Haig and Aznavourian and Zemel and Wald, it has looked back at Kent and Aptheker and distinguished them on two grounds. I mean, it has made very clear that there is a difference between the fundamental right of interstate travel and the lesser right of international travel, but also it has cabined those cases to the First Amendment context. I guess we're not—you're telling me what the cases have been, and I'm asking you what the Constitution says, Magna Carta, Blackstone, you know, Cook, everybody. What has been said, what is the text, history, and tradition about international travel? Or do you not—I mean, can you engage that? Well, I can say that he doesn't point to anything in U.S. history on that score. He's looking much farther back, but I don't think he's pointed to anything. That's not a penalty. That's a benefit when you're doing text, history, and tradition, isn't it? I'm sorry. Go farther back. Well, certainly, but the Supreme Court hasn't recognized it as being meaningful here yet, and it has addressed this issue before. And so I think the fact that it has stepped back from that says a lot. If the Court has no further questions on the constitutional issue, I wanted to address two other points in the case, if I could. The first is the— Do you have anything in our jurisprudence that binds us in any way on these issues? In the Fifth Circuit, separate and apart from these comments in the Supreme Court, I'm asking you if there's anything in our case law that answers these questions. Yes. Well, there was a case that was decided last year in October 2021 called Getty v. Mayorkas, G-H-E-D-I. Citation 16, F-4, 456. It wasn't cited in the briefing here, and I'm not certain why, but in this— Okay. What this Court said— If you cited a case that's not in your brief, you need to file a 28-J within three business days that gives the citation to it. Okay. And the other side has three business days on that case to do a responsive 28-J, because you're not supposed to cite cases— Okay. I'm sorry. I'm trying to answer my question, and I appreciate that. So you may proceed. Thank you very much for that permission. On the other two points that I wanted to address, Mr. Franklin spent a lot of time in the reply brief arguing that CIC services and direct marketing govern this case with respect to his APA claim seeking an injunction. And I just wanted to point out CIC services and direct marketing arise in an extremely different context where the parties were challenging a third-party information reporting requirement. It had nothing to do with challenging a tax assessment, which is what he's doing here, ultimately.  Can the federal government bar people from international travel for the rest of their life over a $25 fine? Well, Your Honor, the standard here is that the rational basis would apply. If this court—rational basis presumably still means something. It's certainly possible that a court could find that something like that might be irrational, but rational basis would be the standard if it's not a federal right. It's a binary test. And there's certainly—we don't think there's any concern in this case with this statute in meeting that standard. One final point I'd like to make. Mr. Franklin has made a lot of arguments throughout this case about a lack of due process because he didn't have an opportunity pre-assessment to challenge the penalties. I do want to point out he had a prepayment opportunity. He had what's called a collection due process opportunity for a hearing there. And if you look at page 364 of the record, there's a copy of the notice of federal tax lien that was issued in April of 2018. And it lays out the years and the assessments, and then at the bottom there's text explaining that he could seek a collection due process hearing. So he had this prepayment option. He doesn't—right now it looks like he has only the refund option, but he did certainly have that due process opportunity here, and he would have it in the refund case as well. Do you have a jury trial right? In— A due process hearing. No, it's an administrative hearing. And then he could take—there's a notice of determination that would issue from that, and then he could take that to tax court and ultimately hear. If the Court has no further questions. Thank you, Counsel. Thank you very much. Your Honors, to be clear, we have ample U.S. history. For example, in 1776 when Thomas Jefferson penned the Declaration of Independence, he referred to the self-evident and inalienable rights, which of course included life, liberty. That liberty is the same liberty that has found its way into our Fifth Amendment and protection under the Due Process Clause. It is the same liberty that was significant and fundamental enough for us to break political ties with England, to form a new nation, and for many people to lose their lives in an effort to obtain a more free country. And I will say, it's not lost on me, that we're standing here today in this—probably the most hallowed of institutions in what we arguably have as the freest country in the history of the world. And we are standing here debating whether or not the right to travel outside of our borders, our man-made borders, is a fundamental right or not. Now I will say there are times, I think, where we as a profession, as an institution, we dress things up that may be simple, self-evident concepts in the language of fancy jurisprudence and language that obscures the fact that nobody really knows what the heck this term means exactly. But we are going to analyze it, we're going to take some of the discretion away, but we're going to say, you know, here's a broad term that was not meant to be this way to show a restrictive nature. It was broad because it was meant to imply there's a lot here, I can't capture it all in a word. And so, you know, we do this as a profession, but we have to step back at some point and say, what are we talking about here? We're talking about the right to leave our borders. We sometimes lose the forest for the trees, and I think this is a precise instance of that. Now, with respect to the Aznavourian case, and yes, it used a rational basis, and it did find there, in fact, that the regulation at issue, which again was just relinquishing or pulling back SSI payments, didn't even restrict travel, the Court there said, this doesn't even actually implicate a right or an interest that is protected within that liberty concept of the Due Process Clause. Instead, it only has an incidental effect on it. We don't need to apply that. And go back, you know, Judge Southwick, you traveled, you read correctly, remembered correctly. The Court, as I said, did start to refer to it or use the word freedoms, right, to travel abroad, and said that, and I think this is important, that it was not, that freedom was not to be judged by the same standard as the right to travel interstate. Again, back to the theory that reconciles this, is it was not referring there, it was not referring there to the standards that we want to say here, strict scrutiny or rational basis, or even intermediate, it wasn't referring to those. So it was referring to the standards applicable to, for example, the privileges and immunity jurisprudence, right, versus the analytical rubrics that might come into play under the substantive Due Process Clause, or substantive Due Process jurisprudence. Even more to the point there, the Aznavourian Court, the entire reason for its making that statement was to underscore the fact that that case did not actually involve an infringement of a right that was protected by the Due Process Clause. And I will urge you, Your Honors, to read footnote 8 of Shapiro. Footnote 8 of Shapiro, which is cited directly before and directly after that sentence, the use of the word freedom is important here, but not in the direction that it seems to imply. It actually indicates, no, I'm talking about something more general that may, is not a Due Process Clause right. And I will note that in footnote 8, the Court there acknowledged that the cases that had, that addressed this right to travel had been premised on a score of different textual bases in the Constitution, the Privileges and Immunities Clause, the Commerce Clause, the Due Process Clause, citing to Kent and Apathiker. Thank you, Mr. Freeman. Rebuttal argument. Thank you. And this case is submitted. This concludes the oral arguments for this session of the Court. The Court will stand adjourned pursuant to the usual order. I'll rise.